AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 21-sc-125 |
| INFORMATION ASSOCIATED WITH TWO PARLER ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY PARLER PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATIONS OF 18 U.S.C. 1752 | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Information associated with "@TheOchsReport" and "@MurderTheMedia" ("Target Parler Account(s)") which is stored at premises owned, maintained, controlled, or operated by Parler, LLC ("Parler"), a company headquartered at 209 South Stephanie St., B135, Henderson, NV 89012-5501, (as further described in the attached affidavit in support of search warrant, incorporated fully herein, including Attachment A).

located in the _____ District of _____Nevada_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to defraud the United States |
| 18 U.S.C. § 372 | Conspiracy to impede or injure an officer |
| 18 U.S.C. § 1512(c)(2) | Obstructs, influences, or impedes any official proceeding |
| 18 U.S.C. § 1752(a) | Unlawful Entry into Restricted Buildings or Grounds |

The application is based on these facts:

See attached Affidavit.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Roger Dean, FBI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: _____01/15/2021_____

_____
*Judge's signature*

City and state: __Washington, D.C.__

G. Michael Harvey ,U.S. Magistrate Judge
_____
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❒ Original          ❒ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  21-sc-125 |
| INFORMATION ASSOCIATE WITH TWO PARLER ACCOUNTS | ) | |
| THAT ARE STORED AT PREMISES CONTROLLED BY PARLER | ) | |
| PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF | ) | |
| VIOLATIONS OF 18 U.S.C. 1752 | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Nevada _____
*(identify the person or describe the property to be searched and give its location)*:

Information associated with "@TheOchsReport" and "@MurderTheMedia" ("Target Parler Account(s)") which is stored at premises owned, maintained, controlled, or operated by Parler, LLC ("Parler"), a company headquartered at 209 South Stephanie St., B135, Henderson, NV 89012-5501.(as further described in the attached affidavit in support of search warrant, incorporated fully herein, including Attachment A).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____ January 29, 2021 _____ *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ G. Michael Harvey _____ .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:  01/15/2021 _____          _____
                                                                                   *Judge's signature*

City and state:          Washington, D.C. _____     G. Michael Harvey, U.S. Magistrate Judge
                                                                                   *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: <br> 21-sc-125 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with "@TheOchsReport" and "@MurderTheMedia" ("Target Parler Account(s)") which is stored at premises owned, maintained, controlled, or operated by Parler, LLC ("Parler"), a company headquartered at 209 South Stephanie St., B135, Henderson, NV 89012-5501.

**ATTACHMENT B**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

I.     **Information to be disclosed by Parler ("PROVIDER") to facilitate execution of the
warrant**

To the extent that the information described in Attachment A is within the possession,

custody, or control of Parler, regardless of whether such information is located within or outside

of the United States, and including any messages, records, files, logs, or information that have

been deleted but are still available to Parler, or have been preserved pursuant to a request made

under 18 U.S.C. § 2703(f), Parler is required to disclose the following information to the

government for the Target Parler Account(s) listed in Attachment A for the time period January

1, 2020 to the present:

> a.     all information in the possession of Parler that might identify the
> subscriber(s) related to the Target Parler Account(s), including names,
> telephone numbers, email addresses, the length of service (including start
> date), means and source of payment for services (including any credit card
> or bank account number stored by third-party payment processors on
> Parler's behalf); and "identification information" retained by Parler,
> including, but not limited to, "selfies" provided for Parler's optional
> verification process.

> b.     all records pertaining to device and location information associated with
> the Target Parler Account(s), including Internet Protocol ("IP") addresses,
> device type(s), web browser type(s), operating system version, phone
> carrier and manufacturer, member agents, application installations, device
> identifiers, mobile advertising identifiers, and push notification tokens;

> c.     all Usage Information associated with the Target Parler Account(s),
> including information about interactions with Parler's services, such as the
> posts or other content that the user(s) of the Target Parler Account(s)
> viewed, the searches conducted, the people/Parler accounts followed, and
> the dates and times the user(s) of the Target Parler Account(s) visited
> Parler via the web or mobile application;

d.      all "contacts" associated with the Target Parler Account(s), including imported contacts from email or address books;

e.      all privacy and account settings;

f.      all information about connections between the Target Parler Account(s) and third-party websites and applications;

g.      all past and current usernames/display names, account passwords, and names associated with the Target Parler Account(s);

h.      all direct messages associated with the Target Parler Account(s);

i.      all records of parleys, upvotes, downvotes, echoes, and/or media associated with the Target Parler Account(s);

j.      all records pertaining to communications between Parler and any person regarding the Target Parler Account(s), including contacts with support services and records of actions taken; and

k.      all cookies (including session cookies and persistent cookies) pixel tags, records of session times and durations, as well as any temporarily assigned network address associated with the Target Parler Account(s).

2.      Parler is hereby ordered to disclose the above information to the government

within **14 DAYS** of issuance of this warrant.

FBI Washington Field Office – Northern Virginia Resident Agency
ATTN: Roger Dean
601 4th Street, NW
Washington, DC 20535-0001
rrdean@fbi.gov

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. §§ 371, 372, 1512(c)(2), and 1752(a), as described in the affidavit submitted in support of this Warrant, including, for each Account, information pertaining to the following matters:

    (a) Information that constitutes evidence of the identification or location of the user(s) of the Account;

    (b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

    (c) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

    (d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

    (e) Evidence regarding OCHS's intent to disrupt or interfere with the Joint Session of the United States Congress on January 6, 2021;

    (f) Information regarding OCHS's plan to travel to Washington, D.C., for the time period including January 6, 2021;

(g) Information regarding OCHS's intent to incite, organize, promote, encourage or participate in a riot or civil disorder in Washington, D.C. for the time period including January 6, 2021;

(h) Evidence of OCHS's intent to "stop the steal" or otherwise object to, or interfere with, the 2020 U.S. Presidential Election results;

(i) Evidence of OCHS's or other individual's entrance into the Capitol on January 6, 2021, including but not limited to photographs, video, social media postings, and communications about said conduct; and

(j) Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

### III.  Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH<br>OF INFORMATION ASSOCIATED<br>WITH TWO PARLER ACCOUNTS<br>THAT ARE STORED AT PREMISES<br>CONTROLLED BY PARLER PURSUANT TO<br>18 U.S.C. 2703 FOR INVESTIGATION OF<br>VIOLATIONS OF 18  U.S.C. 1752 | )<br>)<br>)   **Case No.**  21-SC-125<br>)<br>)<br>)<br>)<br>) |

*Reference:*    *USAO Ref. # 2021R00162; Subject Account(s): @TheOchsReport;*
*@MurderTheMedia*

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Roger R. Dean, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with one Parler, LLC ("PROVIDER") Account—that is @TheOchReport (the "SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled, and operated by Parler, an electronic communications services provider and/or remote services provider and social networking company which is headquartered at/accepts service at a company headquartered at 209 South Stephanie St., B135, Henderson, NV 89012-5501.  The information to be searched is described in the following paragraphs and in **Attachment A**.  The items to be seized are described in the following paragraphs and **Attachment B**.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the

1

information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have held this position since July of 2015. I am currently assigned to a squad that investigates violent gang and drug criminal enterprises out of the Northern Virginia Resident Agency of the Washington, D.C. Field Office of the FBI.

3.      The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation from other individuals, including other law enforcement officers, as well as my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for the search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 371, 372, 1512(c)(2), and 1752(a) have been committed by NICHOLAS OCHS ("OCHS") and that the Parler account @TheOchsReport and @MurderTheMedia (the "SUBJECT ACCOUNTs") will contain evidence, fruits and instrumentalities of the offenses under investigation.   There is also probable cause to search the information described in Attachments A for evidence of these crimes, as described in Attachments B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is a "district court of the United States … that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## PERTINENT FEDERAL STATUTES AND DESIGNATIONS

6.      18 U.S.C. § 1752(a) makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a restricted building includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

7.      18 U.S.C. § 1512(c)(2) criminalizes corruptly obstructing, influencing, or impeding any official proceeding or attempting to do so.

8.      18 U.S.C. § 372 makes it unlawful for two or more persons to prevent, by force (including by intimidation or threat), any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof.

9.      Finally, 18 U.S.C. § 371 criminalizes conspiracies to violate the laws of the United states.

## PROBABLE CAUSE

10.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Vice President Mike Pence was present and presiding in the Senate chamber.

11.      With the joint session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. Temporary and permanent barricades surround the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. At such time, the joint session was still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

12.     On January 6, at 4:13 p.m., OCHS, a resident of Hawaii, posted a photograph to his Twitter account, @OchsForHawaii, with the caption, "Hello from the Capital lol," which appears to depict OCHS and another individual smoking cigarettes inside the Capitol (*see* https://twitter.com/OchsForHawaii/status/1346927847361966088).   The picture and post were uploaded from OCHS' iPhone.  OCHS later admitted to a CNN reporter that he entered the Capitol. CNN published a photograph that appears to depict OCHS in the crowd walking through the Capitol's halls.

13.     OCHS told CNN, "We didn't have to break in, I just walked in and filmed."  In fact, some rioters pushed over barricades and shoved police officers out of the way to enter the Capitol, while others scaled walls and broke windows.  Once inside, Ochs told CNN, "There were thousands of people in there -- they had no control of the situation. I didn't get stopped or questioned."  OCHS also reportedly told CNN that he was working as a "professional journalist" and did not enter any of the offices or the chambers.  OCHS is not listed as a credentialed reporter with the House Periodical Press Gallery or the U.S. Senate Press Gallery, the organizations that credential Congressional correspondents.

14.     According to interviews he has given the media, OCHS is the leader and founder of a Hawaii chapter of the "Proud Boys" organization.  OCHS also has "PROUD BOY" tattooed

on his right forearm.  The Proud Boys have been vocal since the 2020 U.S. Presidential Election in calling for action over the false claims that President Trump lost the election due to widespread voter fraud.  Some members have advocated for violent action to achieve these ends.  Self-identified members of the Proud Boys descended on Washington, D.C., earlier this week, as part of activities planned to protest the certification of the 2020 U.S. Presidential Election results.

15.   On November 16, 2020, OCHS made a post to @TheOchsReport in which he forwarded a Tweet by President Trump declaring, "I WON THE ELECTION!" and OCHS stated, "Show this tweet to leftists and say they won't do shit when he just keeps being president.  Don't say it was stolen or rigged.  Just say we're doing it and they won't fight back.  They are getting scared, and they don't function when they're scared."

16.   Based on open source searches, the following posts depicting OCHs inside and around the Capitol building were also posted on January 6, 2021 to the SUBJECT ACCOUNTS:





17.     A preservation letter was submitted to Parler on January 10, 2021 for *@TheOchsReport.*

18.     After leaving the Capitol on January 6, 2021, OCHS posted a video to his account on the social media site Telegram, which was then posted on Twitter by the Evidence-Based Cybersecurity Research Group (@evidencebasedc1).[1]  The video, which OCHS appears to have recorded on a cell phone, shows OCHS and an acquaintance walking down a sidewalk in front of some row homes.  OCHS states, "Viewers, . . . we have some good news:  . . .  We have just, uh, peeked through this window, and on the television the headline reads that Congress stopped the vote when we stormed the Capitol.  And, as we've been saying all day, we came here to stop the steal.  We were being sarcastic, but we didn't know we were actually going to . . . ."  OCHS' companion then asks, "Wait, you were being sarcastic?"  OCHS replies, "I was being a bit facetious . . . ."  OCHS concludes by saying words to the effect of, "It may resume, but the steal is for now stopped.  You're welcome, America!"

19.     I have identified OCHS as the person in the photograph posted to the SUBJECT ACCOUNT from January 6th inside the Capitol, and to the video posted to his Telegram account from after storming the Capitol, not only from context, but also from comparing the photograph/video with photographs of OCHS from his 2020 bid for election to the Hawaii State Legislature.  OCHS ran for election to be the Republican representative for Hawaii House District 22.

20.     On January 7, 2021, as OCHS was returning from his trip to Washington, D.C., OCHS was arrested in Hawaii upon a warrant and complaint charging him with one count of

---

[1]  @evidencebasedc1 is the official Twitter account for the Evidence-Based Cybersecurity Research Group, a research group that is part of the Georgia State University system which "seeks to produce empirical evidence and provide systematic reviews of existing empirical research regarding the potential effect of existing cyber-security policies and tools in preventing the development and progression of cyber crimes"  *See https://ebcs.gsu.edu/about/.*

Unlawful Entry into Restricted Buildings or Grounds, in violation of Title 18, United States Code, Section 1752.

## BACKGROUND ON PARLER

21.     In 2018, Parler, LLC launched the privacy-focused, microblogging and social networking platform "Parler."[2] Parler previously could be accessed via the web at "https://www.parler.com" or could be downloaded as an application on a mobile device via Google's Play Store or Apple's App Store.  Since January 6, 2021, Google and Apple decided to remove the app from their stores, and Amazon suspended Parler from its Web-hosting service at midnight on Monday, January 11, 2021.  Law enforcement has made contact with Parler, though, and they are accepting service of process, which they will respond to as soon as they regain access to their data.

22.     In order to make comments and post content on Parler's network, a new user—or "Parleyer"—must create a Parler account. The account creation process involves the new user providing Parler with an email address and phone number, as well as a password. After creating the account, the user may update his or her account information with a profile photo and may choose other Parler accounts, such as news networks or individuals, to follow.

23.     The new user's feed will be populated, in chronological order, by written posts and media (*i.e.*, image and video files) associated with the accounts that the new user has chosen to follow. Posts are referred to as "Parleys" on Parler. A Parler user will receive a notification: (1) when Parler accounts the user follows create new Parleys, (2) when any Parler account "echoes" (*i.e.*, shares) the user's Parley, and (3) when any other account votes on the user's own Parleys

---

[2] Although the service takes its name from the French verb "parler" (pronounced "par-lay"), meaning "to speak," Parler is pronounced "parlor."

(either an upvote, which is a sign of agreement, or a downvote, which a sign of disapproval). Parleys are limited to 1,000 characters in length. And, as is the case with other social media platforms, like Twitter and Facebook, Parler users may include hashtags (*i.e.*, a metadata tag prefaced by the hash symbol ("#")) in their Parlays as a form of user-generated tagging for cross-referencing content related to a particular subject or theme.[3]

24.     Parler offers five different "verification badges" for a user's profile, based on the user's relationship to the platform and the public.

a.   The first type of badge is the gold "Verified Influencer" badge. People with a large following who have the potential to be targeted for impersonation, hacking, or phishing campaigns may apply for a "Verified Influencer" badge. This badge is to protect the profile's authenticity and prove the user's identity to the Parler community.

b.   The second type of badge is the blue media partner badge. Blue badge partners use the Parler "commenting plugin" to import articles, content, and comments from the partner's website. Public comments made on the articles and posts outside of the Parler platform will also be mirrored on the partner's Parler account.

c.    The third type of badge is the "Parler Affiliate" badge, which permits Parler to auto-post articles directly from the affiliate's website.

d.    The fourth type of badge is a black badge, indicating that an account is private. Parler users can choose between having a public or a private profile. If a user chooses to have a public account, then (1) anyone with Internet access can see (but

---

[3] Parler also has a search function that enables its users to search Parler for keywords, usernames, or pages, among other things.

not comment on) the public user's posts, and (2) all Parler users can see, comment, echo, and vote on the user's posts. In contrast, a private Parler user only shares his or her Parleys with accounts the user approves.

e.   Finally, the fifth badge is the red badge, which indicates that a user is a "real user."[4] This optional verification process provides "Parler Citizen" status. This step requires that the account owner use his or her web camera to take a photograph of the front and back of the owner's government-issued identification (*e.g.*, driver's license).[5] Then, the owner must submit a "selfie" taken with the web camera.[6] Real users are verified, unique people on Parler's network, but this does not mean the user is who they claim to be, just that they are "real users," not computer-generated bots.[7]

25.   Parler also offers its users a private messaging platform where they can exchange "direct messages." These messages are sent to the recipient's "Messaging" inbox on Parler. These direct messages are stored in the user's inbox, as well as on Parler's network. Furthermore, if a user contacts Parler directly, Parler may retain the content of those communications, as well as any attachments.

---

[4] As is the case with other social media sites, Parler users must be at least 13 years old to sign up for an account.

[5] According to Parler's Privacy Policy (https://legal.parler.com/documents/privacypolicy.pdf), Parler retains only an anonymized hash, corresponding to the information the identification document contains, in order to prevent identify theft and impostor accounts. Parlor's Privacy Policy states that "[n]o personally identifiable information from [a user's] account can be retrieved from the stored hash."

[6] According to Parler's Privacy Policy, Parlor retains the selfie to prevent the creation of impostor accounts, but they store the selfies in encrypted form.

[7] Regardless of whether a Parler user has a public or private profile, all Parler users may "block" those with whom they do not wish to communicate. Blocking a user makes it so that the blocked account will not see that the other user's account exists.

26.     Per Parler's Privacy Policy, Parler collects any information a user chooses to provide to Parler, such as Parleys, follows, photographs, videos, GIFs (Graphics Interchange Format images), comments, votes, and echoes. And, if a user permits Parler to access the address book on the user's device or gives Parler permission to import contacts from an email account associated with a Parler account, Parler may access and store names and contact information from the user's address book and/or contact lists.

27.     Parler also retains payment-related information, such as credit and debit card or automated clearing house (ACH) information, which is stored by Parler's third-party payment processor on Parler's behalf. Parler allows its users to monetize their content and following through "tipping." Users can connect a credit card to their account and then use that means of payment to tip other users, enabling users to be paid for publishing content on the site. As part of that functionality, Parler collects information from tax form W-9, as required by the Internal Revenue Service. Parler retains that information, in encrypted form, for purposes of legal compliance.

28.     With regard to location and tracking information, Parler may retain information about the device and software a customer uses to access Parler's services, including Internet Protocol ("IP") addresses, device type, web browser type, operating system version, phone carrier and manufacturer, member agents, application installations, device identifiers, mobile advertising identifiers, and push notification tokens. Parler and its third-party partners, such as analytics partners, may also collect and retain information using session and persistent cookies, pixel tags, and similar technologies.

29.     With regard to a user's interaction with Parler's platform, Parler receives and retains information about a user's posts or other content viewed, the searches conducted, the people followed, and the dates and times a user visits Parler's website or mobile application.

30.     As explained herein, information stored in connection with the SUBJECT ACCOUNT  may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element, or, alternatively, to exclude the innocent from further suspicion. In my training and experience, IP logs, stored electronic communications, and other data retained by companies like Parler can indicate who has used or controlled a particular account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, and posts may be evidence of who used or controlled a Parler account at a relevant time. Further, Parler account activity, such as IP logs and the date and time of connection to Parler's platform, can show how and when an account was accessed or used. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crimes under investigation. Last, Parler account activity may provide relevant insight into the Parler account owner's state of mind as it relates to the offense under investigation. For example, information on the Parler account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime) or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

31.     Therefore, the account records retained by Parler are likely to contain the material described above, including stored electronic communications and information concerning the user(s) of the SUBJECT ACCOUNT such as account access information, transaction information, and other account information.

### REQUEST TO SUBMIT WARRANT BY TELEPHONE
### OR OTHER RELIABLE ELECTRONIC MEANS

32.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant. I submit that Assistant U.S. Attorney Kathryn  Rakoczy, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

### CONCLUSION

33.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

_____

Roger A. Dean
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me via telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3)
on January 15, 2021.

_____
G. Michael Harvey
UNITED STATES MAGISTRATE JUDGE

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of:

_____
[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]
I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.      such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____       _____
Date                                              Signature

22